UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

SARAH ELIZABETH FREY,           )
KEVIN ENRIGHT and               )
PROTECT OUR WOODS, INC.,        )
   Plaintiffs,           )
          )
 vs.                        )       1:00-cv-660-RLY-WTL
          )
          )
UNITED STATES ENVIRONMENTAL)
PROTECTION AGENCY, STEPHEN     )
L. JOHNSON, ADMINISTRATOR,      )
AND CBS CORPORATION[1]          )
    Defendants.        )

**ENTRY ON DEFENDANTS' MOTIONS TO DISMISS**

   This matter is before the court on two motions to dismiss, one filed by the United

States Environmental Protection Agency ("EPA") and one filed by CBS Corporation

("CBS") formerly known as Viacom, Corp.  This is a case premised upon environmental

law, brought by two citizens and a citizen organization against the EPA and CBS which is

the successor corporation to Viacom which is the successor corporation to Westinghouse,

whose facility caused three different sites (Lemon Lane Landfill, Neal's Landfill and

Bennett's Dump) in the Bloomington, Indiana area to be contaminated with

polychlorinated biphenyls ("PCBs"), dioxin and other toxic chemicals.  The three

---

   [1]On February 9, 2006, the court granted the motion of Defendant Viacom, Corp. (now
renamed CBS Corporation) to amend caption to reflect its correct legal name.

Superfund NPL sites have been in the process of remediation since a consent decree was entered into in 1985. Like this piece of litigation, which has already made the trip up and back to the Court of Appeals twice, the road to cleaning up these sites has been laden with obstacles. In short, through this lawsuit the Plaintiff's challenge the administrative processes, method of remediation chosen and results of the remediation efforts. In the pending motions the Defendants argue, pursuant to Fed. R. Civ. P. 12, the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") dictate that most of the twelve counts in Plaintiffs' First Amended Complaint be dismissed either due to lack of jurisdiction or because they fail to state a claim upon which relief may be granted. For the reasons discussed in this entry, the court agrees in part, with the Defendants and finds that those portions of Counts Four, Seven and Nine which are not premised upon the citizen-suit provisions of CERCLA are dismissed and Counts One, Five, Eight, Ten, Eleven and Twelve are dismissed in their entirety.[2]

---

[2]This court's job of analyzing and determining the merits of the motions put before it has been made particularly difficult in this instance due to the manner in which Plaintiffs have pled their case. The First Amended Complaint is 92 pages long and in 441 paragraphs. The first two counts alone, not including previously pled and incorporated paragraphs, take up over 41 pages and 216 paragraphs, nearly all of which are wholly unnecessary under the federal rules for pleading. It was all the court could do to resist the temptation to *sua sponte* dismiss the complaint and require Plaintiffs to replead the matter consistent with the requirements of Fed. R. Civ. P. 8 that claims for relief be set forth as short and plain statements. Plaintiffs' claims are rife with statements of supporting evidence, speculation and argument - none of which enhance the purpose of a pleading and all of which detract from the process of determining merit. However, the process of narrowing the issues has already been prolonged through appeals and other procedural detours, so the court has opted to dive into the quagmire that is Plaintiffs' First Amended Complaint in hopes of resurfacing with a tighter grasp on the issues properly before it.

The factual history underlying this dispute has been set forth previously several times by this court and the Seventh Circuit and those renditions should be consulted for more detail than the court provides here, where the standard of review, at least with respect to a contention that a particular count fails to state a claim upon which relief may be granted, requires the court to presume the factual foundation as alleged. *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir. 1997). However, to give some chronological perspective to the underlying circumstances, the court notes that: 1) the original 1985 consent decree required CBS to excavate and incinerate the PCB laden soil at the sites; 2) the Indiana State Legislature acted in 1991 to block construction of the required incinerator, which resulted in negotiations for an alternative remedy and eventually the appointment by this court of a special master to assist the parties (EPA and CBS) in reaching agreement on those methods; 3) adopting the report and recommendation of the special master, in February of 1999, this court approved a schedule which called for "source control" remediation (through soil excavation) at two of the sites to be completed by the end of 1999 and at the other site by the end of 2000; 4) the EPA later amended the Record of Decision (ROD) with respect to the final remedy applicable to each of the sites, approving soil excavation from "hot spots" at the sites with off-site removal and the additional construction of  landfill caps, but left interim and final water treatment and sediment removal to further study and later decisions; 5) in 2001 the Seventh Circuit reversed, in large part, a decision of this court to dismiss Plaintiffs' action based upon lack of subject matter jurisdiction; 6) in 2005 the

Seventh Circuit reversed a grant of summary judgment in favor of the EPA, which had been premised upon CERCLA's prohibition of citizen suits challenging a remediation action until the remediation effort was completed, finding that the only definitive remedial action approved by the EPA was the completed soil excavation at the sites.

**COUNT ONE**

Plaintiffs claim to bring Count One of their complaint pursuant to 42 U.S.C. § 6972(a)(1)(B), a provision of the Resource Conservation and Recovery Act ("RCRA"). They seek to enjoin the EPA and CBS from "contributing to the ongoing hazards posed by the current hazardous waste storage and disposal activities" at the three sites that are the subject of this litigation. CBS and the EPA claim that CERCLA provides its own exclusive statutory method by which a citizen may challenge EPA selected CERCLA remedies at 42 U.S.C. § 9659 and that Plaintiffs are attempting to circumvent that exclusive statutory remedy by invoking the citizen-suit provisions of RCRA. This line of argument by Defendants is reoccurring, as they maintain that throughout the First Amended Complaint, Plaintiffs improperly seek to utilize other statutory schemes to circumvent CERCLA and its self-limiting avenues of challenge. Plaintiffs respond by pointing to other language within CERCLA that they say preserves their right to pursue actions based upon other statutes and also claim that in Count One they are addressing releases that are beyond the borders of the three Superfund clean-up sites.

Looking at the later contention, that Plaintiffs' complaint addresses more than the three CERCLA Superfund sites, their complaint belies this argument.  Throughout the 164 paragraphs that make up the unnecessarily long Count One, Plaintiffs refer to the hazards present at the three identified Superfund sites.  The count is divided into three parts, each of which provides detail with respect to the alleged ongoing hazards at each of the three identified sites.  The paragraph which summarizes the relief sought in Count One specifically refers to the ongoing hazards present "at the three Bloomington Westinghouse CERCLA NPL sites that are the subject of this suit."  While Plaintiffs are entitled to have the allegations of their complaint presumed as fact when a motion to dismiss is reviewed, those same allegations need not be ignored when they undermine one of  Plaintiffs' own claims or arguments.  *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir. 1992).  Put another way, a plaintiff can plead himself out of court by providing more detail than is required when the details are inconsistent with the theory of recovery.  *See Lekas v. Briley,* 405 F.3d 602, 613-614 (7th Cir. 2005).  This court, the court of appeals and apparently Plaintiffs, at the time they drafted their complaint, have all interpreted this lawsuit to be a challenge to the process and substance of the remediation efforts at these three sites.  To suggest otherwise this deep into the litigation is disingenuous at best and certainly not supported by the pleadings.

That leaves the question of whether or not CERCLA excludes or preserves actions based upon RCRA or other federal statutes where those actions are aimed at ongoing

hazards at a site where the EPA has chosen and, at least with respect to source control, completed the approved remedial action.  Section 113(h) of CERCLA provides:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
>
> > (1) An action under section 9607 of this title to recover response costs or damages or for contributions.
> >
> > (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
> >
> > (3) An action for reimbursement under section 9606(b)(2) of this title.
> >
> > (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter.  Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
> >
> > (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

Section 113(h) deprives the court of jurisdiction[3] over any dispute with regard to

---

[3]The statute's use of the term "jurisdiction" notwithstanding, the appellate court has previously informed that failure to comply with section 113(h) results in dismissal under Fed. R.

remedial activities brought under federal law other than those excepted. *See North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244-1245 (7th Cir. 1991).  An action under RCRA is not one of the exceptions listed.  Despite Plaintiffs' attempts to read other sections of CERCLA as creating further exceptions to the Act's own exclusive remedy provisions applicable to challenges of EPA chosen remedial efforts, this court sees no basis for reading additional exceptions into the Act when Congress appears to have wanted such challenges to be handled within the framework of CERCLA itself.[4]  Accordingly, Count One is dismissed.

## COUNT TWO

In Count Two, Plaintiffs claim that the EPA has failed to conduct an adequate Remedial Investigation/Feasibility Study ("RI/FS") as required by CERCLA and also

_____

Civ. P. 12(b)(6), not 12(b)(1). *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001).

[4]The decision in *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239 (7th Cir. 1991) includes a strict interpretation of the limited avenues provided in section 113(h) of CERCLA, 42 U.S.C. § 9613(h), for challenging a remedial or removal activity.  The appellate court also admitted that such a strict interpretation could, under hypothetical circumstances, result in the "unappetizing" foreclosure of judicial review despite the existence of arbitrary agency action.  *Id*. at 1245.  However, it decided that the facts of the case before it did not require it to address such a hypothetical, and left for another day a review of "the outer bounds of this unusual provision." *Id.*  While some might argue that this case provides the opportunity to chart the breadth and plumb the depths of section 113(h), this court finds the same lack of necessity as did the Seventh Circuit in *North Shore*.  In the case at bar, judicial review is not completely foreclosed for the citizen Plaintiffs.  Pursuant to this court's interpretation of what may constitute non-discretionary obligations under CERCLA and the Supreme Court decision in *Bennett*, the Plaintiffs have the opportunity to enforce what the EPA has argued are only "guidelines", thereby in essence assuring that no arbitrary actions with respect to remediation or removal are left unchecked.

claim the EPA failed to complete an adequate Environmental Impact Statement (EIS) pursuant to the National Environmental Policy Act ("NEPA").  The EPA argues that because CERCLA is more recent and specific in what it requires from the EPA, it trumps any procedural aspects of the older and more general NEPA because CERCLA operates as, at a minimum, a functional equivalent.  Therefore, according to the EPA, an EIS was not required.  Further, the EPA claims that a citizen suit may be brought only to force its compliance with a non-discretionary duty and that an RI/FS is not statutorily mandated.

This court agrees with Defendants' contention that more recent environmental legislation has produced numerous more specific "functional equivalents" to the broad requirement of NEPA that an EIS issue.  *See Western Nebraska Resources Council v. U.S. E.P.A.*, 943 F.2d 867, 871-872 (8th Cir. 1991); *State of Alabama ex rel. Siegelman v. U.S. E.P.A.*, 911 F.2d 499, 504 (11th Cir. 1990).  However, in part, that functional equivalency here has to be the RI/FS, which the EPA argues is not mandatory.  That argument is not convincing.

In pertinent part section 116(d) of CERCLA provides:

> The President shall assure that remedial investigations and feasibility studies (RI/FS) are commenced for facilities listed on the National Priorities List, in addition to those commenced prior to October 17, 1986, in accordance with the following schedule:
>
> (1) not fewer than 275 by the date 36 months after October 17, 1986, and
> (2) if the requirement of paragraph (1) is not met, not fewer than an additional 175 by the date 4 years after October 17,

-8-

> 1986, an additional 200 by the date 5 years after October 17,
> 1986, and a total of 650 by the date 5 years after October 17,
> 1986.

42 U.S.C. § 9616(d).

The EPA contends that this section requires that a certain number of investigations and studies at Superfund sites be initiated, but it does not require that any site must have a RI/FS before a remedy is selected.  Reading CERCLA in its entirety, an interpretation of section 116(d) as Defendants promote would result in an absurd finding that Congress mandated that hundreds of investigations and studies at Superfund sites be conducted and that states retain a right to review and contribute to any RI/FS conducted at sites located within its boundaries (*see* 42 U.S.C. § 9621(f)), but no site is required to have a RI/FS. Yet its own regulations speak of "the RI/FS" conducted at a site, in terms which clearly invoke an expectation that one will be conducted, not that one might be conducted.  *See* 42 C.F.R. § 300.430.  Count Two of Plaintiffs' Complaint is not dismissed because the court is not convinced that Congress intended to allow the EPA to pursue a remedy at a Superfund site without a RI/FS or some substantially equivalent alternative process.

**COUNT THREE**

In Count Three Plaintiffs allege that the EPA violated CERCLA by not selecting a remedial action which protected public health, an obligation they contend is a non-discretionary duty.  Section 121(b) of CERCLA provides for the selection of "a remedial

action that is protective of human health and environment, that is cost effective, and that utilizes permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable." 42 U.S.C. § 9621(b)(1).  The EPA argues that, though section 121(b) is Congress' attempt to provide some guidelines and objectives, they are much too amorphous to be characterized and enforced as mandatory duties.

The decision here is not an easy one.  The completion of a RI/FS is a task amenable to a quantitative and somewhat objective definition.  However, the selection of a remedy which protects human health, is cost effective and utilizes certain technologies to the maximum extent possible admits to a fair degree of discretion and is more amenable to qualitative analysis and subjective evaluation.  At the risk of making too trite an analogy, the court suggests that an argument may often be made as to whether one or the other of several multiple choice answers is the best response to a test question, but if an answer is marked it can be said without hesitance that the test question was answered. Here the EPA did employ a remedy, and a contention that another remedy would have better met the guidelines and objectives of CERCLA seems as much a quarrel with the results as it does a challenge based upon the failure to follow a required procedure.

Both sides cite to *Bennett v. Spear*, 520 U.S. 154 (1997) as providing support for their positions.  According to the EPA, *Bennett* stands for the proposition that a citizen suit may challenge an agency's complete omission of mandatory procedures, but the

substance of the ultimate discretionary decision is not a proper target for such a suit. Plaintiffs argue that the EPA failed to follow procedural requirements under CERCLA that it take into account certain ramifications of remedial measures and *Bennett,* with comparable facts under similar citizen-suit provisions, supports a cause of action under those circumstances.

In *Bennett,* ranch operators and irrigation districts filed an action under citizen-suit provisions contained in the Endangered Species Act ("ESA") challenging a biological opinion issued by the federal Fish and Wildlife Service.  The ESA contains citizen-suit provisions at 16 U.S.C. § 1540(g) which are similar to those contained in CERCLA at 42 U.S.C. § 9659(a).  In relevant part, they both allow suits to be brought to compel an action or compliance with a duty which the ESA or CERCLA requires of a federal agency.  In their citizen-suit claim, the *Bennett* plaintiffs maintained that the biological opinion issued by the Secretary of Fish and Wildlife failed to "tak[e] into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat" as required in the ESA at 16 U.S.C. § 1533(b)(2).  The Fish and Wildlife Service argued that the duty was discretionary.  *Bennett*, 520 U.S. at 172.  The Supreme Court found that:

> [T]he terms of § 1533(b)(2) are plainly those of obligation rather
> than discretion: "The Secretary *shall* designate critical habitat, and
> make revisions thereto, ... on the basis of the best scientific data
> available and after taking into consideration the economic impact,
> and any other relevant impact, of specifying any particular area as
> critical habitat." It is true that this is followed by the statement that,

except where extinction of the species is at issue, "[t]he Secretary *may* exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat." *Ibid*. However, the fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical *requirement* that, in arriving at his decision, he "tak[e] into consideration the economic impact, and any other relevant impact," and use "the best scientific data available." *Ibid*. It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.

*Id.* (emphasis in original).

In reaching its decision in *Bennett*, the Supreme Court determined that "taking into consideration" and using "the best scientific data available", though clearly amenable to subjective interpretation, were non-discretionary statutory duties. Here we must decide whether the following statutory language similarly contains a non-discretionary duty:

**§ 9621. Cleanup standards**

**(a) Selection of remedial action**

\* \* \*

**(b) General rules**

**(1)** Remedial actions in which treatment which permanently and significantly reduces the volume, toxicity or mobility of the hazardous substances, pollutants, and contaminants is a principal element, are to be preferred over remedial actions not involving such treatment. The offsite transport and disposal of hazardous substances or contaminated materials without such treatment should be the least favored alternative remedial action where practicable treatment technologies are available. The President [substitute EPA by delegation] *shall conduct an assessment* of permanent solutions

-12-

and alternative treatment technologies or resource recovery technologies that, in whole or in part, will result in a permanent and significant decrease in the toxicity, mobility, or volume of the hazardous substance, pollutant, or contaminant.  In making such assessment, the [EPA] *shall specifically address* the long-term effectiveness of various alternatives.  In assessing alternative remedial actions, the [EPA] *shall*, at a minimum, *take into account*:

> **(A)** the long-term uncertainties associated with land disposal;
> **(B)** the goals, objectives, and requirements of the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.];
> **(C)** the persistence, toxicity, mobility, and propensity to bioaccumulate of such hazardous substances and their constituents;
> **(D)** short- and long-term potential for adverse health effects from human exposure;
> **(E)** long-term maintenance costs;
> **(F)** the potential for future remedial action costs if the alternative remedial action in question were to fail; and
> **(G)** the potential threat to human health and the environment associated with excavation, transportation, and redisposal, or containment.

The [EPA] *shall select* a remedial action that is protective of human health and the environment, that is cost effective, and that utilizes permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable.  If the [EPA] selects a remedial action not appropriate for a preference under this subsection, the [EPA] *shall publish* an explanation as to why a remedial action involving such reductions was not selected.

42 U.S.C. § 9621(b)(emphasis added).

Based upon the Supreme Court analysis in *Bennett*, this court finds that 42

U.S.C. § 9621(b) does contain non-discretionary duties.  The terms or phrases

"shall conduct an assessment", "shall specifically address", "shall ... take into account", "shall select" and "shall publish" all connote an obligation.  Plaintiffs allege that the EPA did not live up to some those obligations and at this stage the court must accept those allegations as fact and allow prosecution of Count Three to proceed.

### COUNT FOUR

Count Four includes allegations that the EPA failed to allow for public participation as required by RCRA and CERCLA and specifically avoided the required opportunity for public participation in the RI/FS process by not completing the RI/FS.  For the reasons discussed under Count One, the court is concerned only with CERCLA's public participation provisions, as RCRA provisions are not subject to a challenge through the remedies set forth in 42 U.S.C. § 9613(h).  Public participation is addressed in section 117 of CERCLA, at 42 U.S.C. § 9617.  The EPA argues that nowhere in that section is there a requirement that it allow public participation in the RI/FS process.  It is correct in that respect.  And, to the extent that it is the EPA's failure to engage in a RI/FS that is at the heart of their complaint here, the count simply duplicates Count Two.  However, at this stage we are required to give Plaintiffs' complaint a most liberal construction, *See Cler v. Illinois Educ. Ass'n.*, 423 F.3d 726, 729-730 (7th Cir. 2005), and though the focus of Plaintiffs' allegations seems to be on the failure of

-14-

the EPA to observe some non-existent statutory obligation[5] to involve the public in

the RI/FS process, Count Four does contain broader allegations of failure on the

part of the EPA to allow public participation, such that it would be improper for

the court to dismiss Count Four in its entirety at this point.

**COUNT FIVE**

Plaintiffs title Count Five as "Violation of CERCLA Remedy Selection

Criteria."  Here they make no effort to point out any specific breach of a non-

discretionary duty set forth by statute.  Rather, Plaintiffs claim that the EPA failed

"to adhere to the letter and spirit of the CERCLA remedy selection process."  The

allegations of the Count clearly speak to and complain of the quality of the remedy

selected.  In line with this court's interpretation of *Bennett*, Count Five is a

challenge to the EPA's "ultimate decision" and not an appropriate challenge under

CERCLA's citizen-suit provisions, which require a showing that the EPA failed to

take a required action not that it has not adhered to the spirit of the legislation.  It

should be dismissed.

---

[5]The court also recognizes that the applicable regulations, as opposed to the legislation, mention public comment on the RI/FS, potentially bringing into play 42 U.S.C. § 9659(a)(1) rather than § 9659(a)(2); however, it makes no determination at this point with respect to the significance of that mention or whether a claim under § 9659(a)(1) has been adequately pled.

**COUNT SIX**

Neither the EPA nor CBS argue that Count Six should be dismissed.
Accordingly, Count Six remains a viable part of Plaintiffs' claim.

**COUNT SEVEN**

In this count, Plaintiffs complain that CBS and the EPA have violated key
requirements of the consent decree which was entered into in 1985.  They bring
the count pursuant to both RCRA and CERCLA.  CBS and the EPA both contest
the appropriateness of any claim under RCRA and, as has been discussed
previously, the court agrees that a claim under RCRA is not allowed when
remedial efforts under CERCLA have been pursued.  The EPA goes on to argue
that the CERCLA citizen-suit provisions do not allow for this type of claim
because the consent decree is not a non-discretionary statutory requirement.  It
further suggests that under CERCLA, Plaintiffs have the option of intervening in
the cause of action which resulted in the consent decree and that would be the
preferred method of challenging any alleged deficiencies with respect to the
consent decree.

Plaintiffs respond by pointing to what they say is the "plain language" of
CERCLA's citizen-suit provisions, allowing such an action to be brought.
Specifically they point to 42 U.S.C. § 9659(a)(1).  In reply, the EPA improperly

asserts an argument not previously raised in their motion or supporting brief that

the provisions of the consent decree which Plaintiffs contend were violated apply

only to CBS.  The court will not consider an argument first raised in a reply.

At 42 U.S.C. § 9659(a)(1), CERCLA provides for a citizen suit to be

brought:

> (1) against any person (including the United States and any other
> governmental instrumentality or agency, to the extent permitted by
> the eleventh amendment to the Constitution) who is alleged to be in
> violation of any standard, regulation, condition, requirement, or
> order which has become effective pursuant to this chapter (including
> any provision of an agreement under section 9620 of this title,
> relating to Federal facilities); ... .

A court approved consent decree certainly fits the description of either a

condition, requirement or order.  CBS does not argue that it can not be sued under

this provision and the EPA offers no authority for the proposition that it can not be

held to its responsibilities, whatever they might be, under the consent decree.

Under the liberal construction that Plaintiffs' complaint is entitled to, they have

pled a cause of action for which relief can be granted and accordingly, Count

Seven is not dismissed.

**COUNT EIGHT**

Count Eight alleges that the EPA violated NEPA by failing to prepare an

environmental impact statement.  Defendants argue again that CERCLA provides

the exclusive scheme for challenging remedial actions, pointing out that, in an earlier case brought by one of the Plaintiffs, this court dismissed a similar claim under NEPA because CERCLA provided the exclusive route to challenge remedial actions.

As discussed previously, NEPA predates CERCLA considerably. While NEPA addressed the need for any agency to assess and set forth ahead of time the environmental impact of its actions, CERCLA specifically sets forth requirements for the government and others in cleaning up identified environmental mishaps. It has brought with it much more specific and stringent requirements than those associated with simply generating an environmental impact statement. Frankly, this court doubts that Congress ever intended that an impact statement as described in NEPA constitute a necessary part of an actual federally led environmental clean-up effort. If it did, CERCLA has subsequently gone much further with requirements such as the RI/FS, which is more than a functional equivalent. Since the Plaintiffs are already challenging the agency through a CERCLA citizen suit, which includes a count predicated upon the failure of the EPA to conduct a RI/FS, an additional count rooted in a superceded or inapplicable NEPA provision has no independent merit. Count Eight is dismissed.

**COUNT NINE**

Plaintiffs assert in paragraph 360 of their First Amended Complaint, the first in Count Nine, a failure of both the EPA and CBS to adhere to the requirements of RCRA and the Toxic Substances Control Act ("TSCA") with respect to the design, construction and operation of a landfill.  They claim this count is founded on the citizen-suit provisions of RCRA, TSCA and CERCLA. The bulk of Count Nine consists of paragraphs of opinion and argument apparently intended to buttress Plaintiffs' assertion that the clean-up methodology chosen was ineffective and left the Neal's Landfill and Lemon Landfill sites as dangerous hazardous waste landfills.  Again, Defendants both assert the exclusivity of CERCLA with respect to actions challenging EPA chosen clean-up procedures and methodology.  In addition, the EPA asserts that the design, construction and operation standards referred to in Count Nine are discretionary guidelines not statutory mandates.

This court has already indicated its willingness to adopt the position advanced by Defendants with respect to the exclusivity of CERCLA's own remedies.  Therefore, to the extent that Count Nine is premised upon RCRA or TSCA, those claims are dismissed.  However, at this stage, Plaintiffs have sufficiently alleged a claim under CERCLA, including allegations that the EPA has failed to follow a non-discretionary statutory directive.  Therefore, Count Nine

will remain a part of this suit to the extent it is premised upon the citizen-suit

provisions of CERCLA.

### COUNTS TEN, ELEVEN AND TWELVE

Count Ten asserts violations of TSCA disposal requirements for PCBs

against both Defendants.  Count Eleven asserts violations of the Clean Water Act

against both Defendants.  Count Twelve asserts that the EPA acted arbitrarily and

capriciously in contravention of the Administrative Procedures Act.  However,

none of these claims are asserted under the CERCLA citizen-suit provisions and

all are aimed at attacking the clean-up measures taken at the sites, as chosen by

the EPA pursuant to CERCLA.  42 U.S.C. § 9613(h) limits the manner in which

such challenges can be made to those set forth within CERCLA.  Accordingly, the

CERCLA citizen-suit provisions provide the exclusive method for Plaintiffs to

mount their challenge and Counts Ten, Eleven and Twelve are dismissed.

### Conclusion

Section 113(h) of CERCLA limits the type of actions that can be brought to

challenge remedial or removal activities completed or in the process of completion

under the Act.  Since this is not a diversity action nor do Plaintiffs bring suit under

state statutes, their avenue of challenge is limited to the citizen-suit provisions of

CERCLA at 42 U.S.C. § 9659, which allows suits against the EPA and private

parties such as CBS for violations of orders, regulations or other requirements that have become effective pursuant to CERCLA or against the EPA for failing to adhere to non-discretionary obligations imposed by CERCLA itself.  Counts Two, Three and Six and portions of Counts Four, Seven and Nine fall within those limitations; Counts One, Five, Eight, Ten, Eleven and Twelve and those parts of Counts Four, Seven and Nine which are not premised upon the CERCLA citizen-suit provisions do not.

Accordingly, the United States' Motion for Partial Dismissal (Docket # 4) and CBS' Motion to Dismiss Non-CERCLA Causes of Action (Docket # 6) are **GRANTED IN PART**.  Counts One, Five, Eight, Ten, Eleven and Twelve of Plaintiffs' First Amended Complaint are dismissed.  Counts Four, Seven and Nine remain a part of Plaintiff's case only insofar as they seek a remedy under the citizen-suit provisions of CERCLA.  Counts Two, Three and Six remain a part of the case as alleged.

IT IS SO ORDERED this 29th day of September 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Copy to:
David Berz
WEIL GOTSHAL & MANGES LLP
1300 Eye Street N.W.
Suite 900
Washington, DC 20005


Electronic Copies to:
Daniel R. Dertke
UNITED STATES DEPARTMENT OF JUSTICE
daniel.dertke@usdoj.gov

Mick G. Harrison
mickharrisonesq@earthlink.net

David B. Hird
WEIL GOTSHAL & MANGES LLP
david.hird@weil.com

Rudolph William Savich
rsavich@aol.com

Brent D. Taylor
BAKER & DANIELS
bdtaylor@bakerd.com